# IN THE U.S. DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANIEL CARPENTER,

   Petitioner,

v.

   Civ. No. _____

J. BALTAZAR,
WARDEN, USP NEW CANAAN,

   Respondent.

FILED
SCRANTON
NOV 18 2016
PER _____
DEPUTY CLERK

---

## MEMORANDUM OF LAW JOINTLY IN SUPPORT OF PETITIONS FOR HABEAS RELIEF AND FOR PRELIMINARY INJUNCTIVE RELIEF

Daniel Carpenter, by himself, submits this Memorandum of Law jointly in support of his petitions for habeas relief under 28 U.S.C. § 2241 and for temporary restraint and preliminary injunctive relief under Rule 65(b) of the Federal Rules of Civil Procedure:

## I. JURISDICTION

The issue of placement in an appropriate facility, and specifically placement in a correctional facility as opposed to residential community placement, is properly heard as a habeas petition under 28 U.S.C. § 2241. *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 242-44 (3rd Cir., 2005) and cases cited therein. Such petitions typically name the warden of the custodial facility and are filed in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 427, 428 (2004).

## II. RESPONDENT VIOLATED MY DUE PROCESS AND STATUTORY RIGHTS BY DENYING ME FAIR CONSIDERATION FOR COMMUNITY PLACEMENT.

### A. Statutory Scheme

The BOP has discretion under 18 U.S.C. §§ 3621(b) and 3624(c) to assign and to transfer inmates to and among prison facilities, including facilities such as halfway houses (also referred to as residential reentry centers, or RRC) that are designed to help outgoing inmates re-transition into society, and including home confinement. It is also required to afford inmates a "reasonable opportunity" to adjust and prepare for community reentry by allowing up to 12 months community placement.

Section 3621(b) directs the BoP to determine the place of confinement. It provides:

> (b) The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau . . . that the Bureau determines to be appropriate and suitable, considering —
> (1) the resources of the facility contemplated;
> (2) the nature and circumstances of the offense;
> (3) the history and characteristics of the prisoner;
> (4) any statement by the court that imposed the sentence; —
> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and
> . . . The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

Section 3621(b), title 18, U.S. Code.

Section 3624(c) requires the BOP to prepare outgoing prisoners for reentry by providing community placement where practicable:

2

(c) Prerelease Custody.—
(1) In general.— The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
(2) Home confinement authority.— The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

Section 3624(c), title 18, U.S. Code. The Second Chance Act of 2008, Pub. L. No. 110-199, 122 Stat. 657 (2008), inserted the current authority to issue community placements of up to12 months (instead of the prior 6).[1] When making a community placement determination for each inmate, the BoP must show that it has individually considered each of the five factors at 3621(b). *Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3rd Cir., 2005)* and nn. 9-10, 248-49 (collecting cases). Categorical determinations, that is, any community placement decision that is applied across-the-board to a group of inmates without individualized consideration, is unlawful. *Ibid.* See also *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006)("[A]n agency may not promulgate categorical

---

[1] The Second Chance Act was intended, in part, to address the BoP's repeated insistence that it could limit inmate community placement to 6 months . Prior to 2002, the BoP maintained that § 3621 authorized it to place an inmate in a halfway house for any portion of a sentence because it deemed a halfway house a penal or correctional institution. In December 2002, the Department of Justice revoked that legal conclusion, and issued a memorandum limiting BoP halfway house placements to 6 months or 10% of a sentence, whichever was less. This change spawned extensive litigation, with many courts striking down the rule as an "implausible reading of the statutes." Ferguson v. Ashcroft, 248 F.Supp.2d 547, 572 (M.D.La. 2003). See, e.g., Goldings v. Winn, 383 F.3d 17, 20, 24 (1st Cir. 2004) and Elwood v. Jeter, 386 F.3d 842, 844-45 (8th Cir. 2004). In response to repetitive judicial invalidation of the 2002 rule, the BoP reissued in February 2005 substantially the same regulation, but casting it instead as a categorical exercise of the inmate placement discretion afforded it under § 3621. Again judicial challenges ensued, and the new regulation proved no more popular than the old: numerous courts held that a categorical elimination of a group of inmates from halfway house placement undercut the individualized consideration of the five factors at § 3621(b) which must occur with each and every halfway house placement. See cases cited above.

3

rules that do not take account of the categories that are made significant by Congress.... Though Congress left the BOP a large territory of discretion in implementing § 3621(b), it did not leave the BOP's duties undefined. The BOP is not empowered to implement selectively the instructions given by §3621(b) by picking and choosing those factors that it deems most compelling) and *Fults v. Sanders*, 442 F.3d 1088, 1092 (8th Cir. 2006).

**B. BoP Implementing Policy**

    **1) General Residential Community Placement**

General BoP community placement guidance is found in BoP Program Statement 7310.04, *Community Corrections Center Utilization and Transfer Procedures*, (12/16/98), which requires the BoP, when making community placements, to assess inmate need for services, public safety, and the responsible management of inmate population. Notwithstanding the prohibition on categorical determinations, that policy still eliminates categories of inmates from community placement. Thus, it provides at pp. 10-12:

> 10. LIMITATIONS ON ELIGIBILITY FOR ALL CCC REFERRALS.
> Inmates in the following categories shall not ordinarily participate in CCC programs:
> a. Inmates who are assigned a "Sex Offender" Public Safety Factor.
> b. Inmates who are assigned a "Deportable Alien" Public Safety Factor.
> c. Inmates who require inpatient medical, psychological, or psychiatric treatment.
> d. Inmates who refuse to participate in the Inmate Financial Responsibility Program.

e. Inmates who refuse to participate, withdraw, are expelled, or otherwise fail to meet attendance and examination requirements in a required Drug Abuse Education Course.
f. Inmates with unresolved pending charges, or detainers, which will likely lead to arrest, conviction, or confinement.
g. Ordinarily, inmates serving sentences of six months or less.
h. Inmates who refuse to participate in the Institution Release Preparation Program.
i. Inmates who pose a significant threat to the community. [ ]
j. Inmates whose admission and release status is pretrial, holdover, or detainee.

As required by the Second Chance Act, the BoP immediately issued an implementing interim rule, stating simply that it would decide community placements considering the five factors at § 3621(b). See 28 C.F.R. § 550.22. The BOP thereafter issued four memoranda on residential community placement.[2] In response to judicial rulings, these memoranda successively moved towards greater utilization of the Second Chance Act community placement authority, by, e.g., forbidding objective categorization or presumptively valid time periods, focusing on specific inmate needs, removing regional approval of full 12 month placement, and so forth. (No conforming changes were made, however, to the core 1998 policy statement, noted above).[3] On May 24, 2013, the BoP issued its latest Internal Memorandum, focusing community placement resources on "those with the greatest need and the highest risk of recidivism." *Id.*, at 1. It also expressly stated that "RRC placement and length of

---

[2] April 14, 2008. November 14, 2008, June 24, 2010 and May 24, 2013.
[3] See, e.g., *Krueger v. Martinez*, 665 F.Supp.2d 477 (M.D. Pa. 2009)(placement based on BoP memoranda that urged a 6 month cap notwithstanding the Second Chance Act invalid).

placement decisions cannot be reduced to ... any ...type of objective categorization....

Staff must continue to exercise their professional judgment when making individual

## 2) Home Confinement

BoP home confinement policy is set forth at Program Statement 7320.01, *Home Confinement*, Sept. 6, 1995. It states that "all inmates referred to community corrections are eligible to be considered for home confinement placement." Id. p. 4, at sec. 6. At p. 6, sec. 12(a), the policy states:

> a. Eligibility. Generally, an inmate may be considered eligible for direct placement on home confinement if he or she:
> - has no public safety factors,
> - had excellent institutional adjustment,
> - has a stable residence with a supportive family,
> - has confirmed employment (if employable), and
> - has little or no need for the services of a CCC [halfway house].

The May 24, 2013 BoP memo states:

> For low need/low risk inmates, home confinement is the preferred pre-release option. This option is currently under-utilized. [The BoP] must make a concerted effort to utilize these effective community placement options for appropriate inmates. In addition to reintegrating inmates more quickly into their communities, maximizing the use of home confinement for appropriate inmates will help mitigate [BoP] critical population/capacity issues."

*Id.*, at 2-3. It further provides:

> I. MAKING AN APPROPRIATE REFERRAL FOR DIRECT HOME CONFINEMENT (PRE- RELEASE)
> As outlined in PS 7320.01, *Home Confinement*, and per 18 U.S.C. § 3624(c)(1), all inmates are eligible for home confinement consideration at their six-month or 10 percent date. When considering an inmate for pre-release community placement, the unit team should pay special attention to reviewing low and minimum security inmates for possible direct placement

on home confinement as allowed under PS 7320.01, *Home Confinement*.
Higher security inmates may be considered if deemed appropriate following
an individual assessment. The basic criteria for home confinement includes:
1) Appropriate release residence...;
2) No recent major disciplinary issues. This should be based on sound
correctional judgment; 3) Any medical or mental health needs that can be
met in the community and funded by the inmate or other documented
resources, and 4) Secured employment is not required for placement on
home confinement. Placement should occur as close to the home
confinement eligibility date as possible. The direct home confinement
referral is not contingent upon USPO residence approval. A site visit should
be requested during the referral process, but should not delay the submission
of the referral.... In judicial districts where [Federal Location Monitoring] is
available,...staff should consider this option for appropriate inmates to the
maximum extent possible.

*Id.,* at 5. Thus, BoP policy clearly states a strong preference for home confinement for all eligible inmates.

## C. Judicial Review of BoP Community Placement Decisions

An inmate does not have a liberty interest in being placed in any particular facility while serving a sentence. *Asquith v. DoC*, 186 Fd.3 407, *Thomas v. Buechele* (3rd Cir. 2014). Nor does Section 3624(c) require the BoP to allot an inmate any pre-release community placement at all. *Woodall* at 251. For these reasons, courts may not encroach on how the BoP ultimately decides to exercise its discretion as to community placement. *Livengood v. Meeks*, citing *Marshall*, 839 F.2d at 942-51 (district court's authority to ensure that an agency adheres to the law does not permit it to displace the agency's decision-making process; the role of the court is limited to ensuring that the agency follows the law and its regulations). But courts may, indeed must, ensure that

7

the BoP community placement process is a deliberative one comporting with the statutory scheme. *Woodall*, supra, 432 F.3d at 244-49 (the BOP may not categorically remove its ability to consider the explicit factors set forth by Congress in § 3621(b) for making placement and transfer determinations).

Courts review BoP community placement determinations under an abuse of discretion standard. *Barden v. Keohane*, 921 F.2d 476, 478 (3d Cir. 2010); Vasquez v. Strada. 684 F.3d 431, 434 (3d Cir. 2012). Where a BoP determination is not individualized but rests instead on a categorical determination, it is an unlawful abuse of discretion. *Woodall, supra*. See *McDowelll v Scism,* No. 4:CV-10- 2187, (M.D. Pa., Jan. 20, 2011) (habeas granted where BoP failed to consider all mandatory factors).

### III. THE BOP ABUSED ITS DISCRETION IN DENYING ME COMMUNITY PLACEMENT.

**A. The BoP unlawfully relied on a categorical determination.**

The BoP relies on subparagraph 10(f) of PS 7310.04 to deny me home confinement. That is, I have been denied community placement because I am due, at some point, to be sentenced in the District of Connecticut case. The BoP's reliance on subparagraph 10(f) is a categorical determination that is unlawful under the case law set forth above. As noted by BoP sentencing expert Jack Donson in the attached affidavit, this policy was intended to avoid an essentially useless community placement for individuals who were scheduled to be picked up or re-incarcerated immediately upon release. Such is not my case. The BoP cannot say that I will be subject to immediate re-incarceration

8

after my release date. Indeed, the judge in the Connecticut case has indicated that it will not schedule sentencing until 3-4 months after all post-trial matters are resolved, at some point later in 2017. The BoP is aware of this fact because I have provided them written notices from the judge to that effect. The BoP is also aware that I was out on bail pending appeal for many years in the case for which I am now in custody. U.S. Probation has already approved my residence and Federal Location Monitoring for me, and the BoP is aware of this fact. I have also communicated to staff my extensive re-entry needs: to secure satisfactory employment, to rebuild family and social ties, to address unmet medical needs, and most particularly, to assist in my ongoing legal defense in a complicated federal case.

I also unquestionably meet the BoP criteria for home confinement: I have an established residence, I am low security, I have never presented any institutional conduct issues, and my family can provide for my medical needs. See pp.5-7, *supra*. For the BoP to rely, under 10(f), on the indeterminate possibility that I may be subject to a future custodial sentence in order to deny me home confinement is precisely the reason why courts invalidate such categorical criteria: because they undercut individualized consideration. My case is a prime example: not only is it virtually impossible for me to be immediately re-incarcerated upon my release (given the judge's position that sentencing will not occur until some months after disposition of post-trial motions), it is conceivable that I may not be incarcerated at all on that case. I won a re-

trial order in this case, twice, and but for the government's cross-appeal would not have been incarcerated in this case.[4] At a minimum, it is certainly reasonable to expect that the Connecticut court could grant me bail pending appeal, as occurred in this case. In these circumstances, not only am I eligible for home confinement, but BoP policy in fact states a clear preference for home confinement for inmates in my circumstances, noting it has historically under-utilized this option. May 24, 2013 Memorandum, at pp. 2-3.

Here, the BoP has haphazardly updated its policies by layering additional memoranda over baseline program statements. Coordination has clearly not been optimal, as the 2013 Memorandum directly conflicts with the 1998 program statement. Given the unambiguous statement in the May 24, 2013 Memorandum that all inmates are eligible for community placement, and the equally clear case law requiring individualized determinations under 3624(c), all of the categorical bars in paragraph 10 of PS 7310.04 would appear to be of questionable legality.

This Court should require the BoP to comply with due process in my case by requiring it immediately to conduct an individualized determination of the five statutory factors at 18 USC 3621(b) regarding my home confinement and to implement its determination forthwith. *McDowelll v Scism*, supra.

## B. The BoP relied on an incorrect factual conclusion.

---

[4] I note that I have a § 2255 petition pending in the Massachusetts district court, and a petition for mandamus in the First Circuit.

10

Contrary to the BoP's statements, I do not now have a pending charge. The federal charges in Connecticut case have been adjudicated by a guilty verdict. My post-trial motions and direct appeal in that case may render the conviction non-final but that is not the same as a pending charge. Charge connotes the legal accusation, or indictment.[5] The charge in the Connecticut case has been resolved and is not longer pending. See *Carey v. Saffold*, 536 U.S. 214, 219-21 (2002)("The dictionary defines `pending' ... as `in continuance' or `not yet decided,'"quoting Webster's Third New International Dictionary 1669 (1993). The conviction may not yet be final (see *Clay v. United States*, 537 U.S. 522, 527 (2003)(conviction final upon expiration of all appellate avenues)) but the indictment has been resolved through an adjudication of guilt. This reasoning comports with the agency concern underlying community confinement for those with detainers or pending charge: that (according to Mr. Donson) such inmates face immediate incarceration to confront the new charge or detainer, and hence have no need of community placement. Such is not my case.

## IV. INJUNCTIVE RELIEF IS WARRANTED HEREIN.

### A. Standards for Injunctive Relief

A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary

---

[5] A criminal charge, strictly speaking, exists only when a formal written complaint has been made against the accused, and a prosecution initiated..... In the eyes of the law, a person is charged with crime only when he is called upon in a legal proceeding to answer to such a charge. *United States v. Patterson*, 150 U.S. 65, 68 (1893).

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council*, 555 U. S. 7, 129 S. Ct. 365 (2008)(citations omitted). The Court noted: "A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 376-77 (quotation marks and citations omitted).

In *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir.1987) the Third Circuit noted that the plaintiff has the burden of proving a "clear showing of immediate irreparable injury," that the "requisite or feared injury or harm must be irreparable--not merely serious or substantial," and it "must be of a peculiar nature, so that compensation in money cannot atone for it." *Ibid.*

### B. The equities favor injunctive relief in my case.

I have a strong likelihood of success on the merits. The Third Circuit has unequivocally held unlawful BoP denial of community placement based on categorical determinations that undermine individualized consideration of the five statutory factors at § 3621(b). *Woodall, supra.* A determination that a pending charge bars community placement necessarily undercuts the statutorily-mandated individual consideration of the five statutory factors. Indeed, this is precisely why revised BoP policy expressly forbids

12

it. See BoP Internal Memoranda cited above. For these reasons, this case presents a clear likelihood of success on the merits.

Courts also have routinely found irreparable injury based on harm to an inmate's family and to the inmate's reintegration efforts that is caused by unlawful denial of community confinement. In *DiStefano v. FBOP*, 2004 WL 396999, 2004 U.S. Dist. Lexis 3190 (S.D.N.Y. March 4, 2004), the petitioner sought injunctive relief challenging denial of halfway house based on the BoP's December 2002 rule. The petitioner argued that his family circumstances satisfied the irreparable injury prong as his children would be without his financial support during the approximately four months when he would otherwise have been eligible for a community placement. The Second Court agreed, relying on *Ashkenazi v. Attorney General of the United States*, 246 F. Supp.2d 1, 9-10 (DDC 2003). There, the court found irreparable injury from the BoP's failure to place the petitioner in a halfway house " because "he will be unable to care for his wife who suffered life threatening injuries for which she continues to require surgery and ongoing medical care and to attend to his business if he is confined in a federal prison." *Ibid.* In *Colton v. Ashcroft*, 299 F. Supp. 2d 681, 688 (EDKY 2004), the court noted that an inmate's irretrievable loss of community readjustment time also constituted irreparable injury. See also *Hurt v. Federal Bureau of Prisons*, 323 F. Supp. 2d 1358, 1561 (M.D. Ga. 2003)("Plaintiff will suffer irreparable injury if the injunction is denied and his

13

incarceration... continues, as his return to his business and his family obligations will be further delayed.")

The same factors exist in my case. I will permanently lose the opportunity to rebuild my community and family ties, to secure my employment and my family's financial situation, to attend to my medical needs. Most importantly, I will lose the opportunity to participate more fully in my defense in the Connecticut case. This is an important aspect of my Sixth Amendment right to counsel. Communication with a lawyer of one's own choosing and having enough time to prepare for one's defense is recognized in international law as a basic element of the right to counsel. See Article 14, Section 3 of the International Covenant on Civil and Political Rights (ICCPR); Article 8 (2) (d) of American Convention on Human Rights. The Third Circuit has specifically recognized that a defendant's right to access counsel after conviction and prior to sentencing must be protected, for the exact reasons I asserted to staff: preparation for sentencing, preparation of post-trial motions. *Cobb v. Aytch*, 643 F.2d 946, 962 (1981). [6]

As to public interest, numerous courts have also acknowledged that, in cases where the BoP is alleged to have unlawfully denied community placement, the public interest is best served by requiring the agency to afford full consideration as the statute

---

[6] Of course, sentencing is a critical stage of a criminal proceeding to which the sixth amendment's guarantee of the effective assistance of counsel applies, and that right includes access to counsel. Mempa v. Rhay, 389 U.S. 128, 134-35 (1967); Townsend v. Burke, 334 U.S. 736, 740-41 (1948).

demands. In *Byrd v. Moore*, 252 F. Supp.2d 293 (WDNC 2003), the court granted preliminary injunctive relief, noting that:

> The public has an interest in prisoners rehabilitating themselves and their reputation in the community.... The public interest would be harmed by the Petitioners no longer being able to work and support their families. The public interest would be similarly injured by any violation of [their] statutory or constitutional rights.

*Id.*, at 306. In *Colton*, supra, the court noted that the public interest would be fostered by an inmate beginning his rehabilitation as soon as possible, as this is the precise purpose underlying the community confinement authority. 299 F. Supp.2d at 686. For these reasons, the *Colton* court issued a preliminary injunction and a temporary restraining order requiring the BoP to transfer the plaintiff to community placement without regard to the regulation it found unlawful. *Ibid.* Similarly, in *Hurt v. FBOP*, 323 F. Supp. 2d at 1362, the court granted a comparable injunction to, inter alia, further the strong public interest in the justice system goals of punishment, deterrence and rehabilitation. The *Hurt* court noted that not only is the public interest served thereby, but the BoP may even benefit financially, administratively and logistically by timely placement of inmates to the community. *Ibid.*

Certainly a grant of injunctive relief herein results in no harm to the BoP. There is no administrative burden on the BoP from my placement; indeed, the BoP would benefit by demonstrating consistency with its own written policies. (Because the BoP serves the public interest, surely any augment of the latter necessarily benefits the agency itself.)

As a practical matter, the BoP gains financially by the relief I request. (The average cost of incarceration for federal inmates in FY 2014 was $30,619.85. See Federal Register Document 2015-05473, filed March 6, 2015.) This cost saving is surely in part why the 2013 Memorandum notes that home confinement has been under-utilized.

Based on the above balancing of equities, preliminary injunctive relief is warranted in this case.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

I have exhausted my administrative remedies in this case. See *Vasquex v. Strada* 684 F.3d 431, 433 (3d Cir. 2012). [7] However, since this case raises in large part a question of law, i.e., whether the categorical elimination of Section 10(f) is valid, it is questionable whether full exhaustion would be required here. See *Woodall, supra,* and *Marlowe v. Ebbert,* Civil No. 3:CV-15-0461 (M.D. Pa., April 17, 2015)(Third Circuit cautions against premature dismissal based on exhaustion grounds), citing *Brown v. Croak,* 312 F.3d 109,112 (3d Cir. 2002).

## VI. RELIEF SOUGHT

### A. Immediate Temporary Restraint

Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a Temporary Restraining Order upon a clear showing that immediate, irreparable injury, loss or damage will result to the movant before the adverse party can be heard in

---

[7] My Central Office response from the BP-11 shall be submitted as soon as I receive it.

opposition. Such damage to me is imminent. In these circumstances, an immediate, ex parte order requiring the BoP to issue within 48 hours a community placement for me, one that does not utilize an unlawful categorical determination based on pending charge or detainer, is fully warranted.

**B. Ultimate Order**

It is worth repeating: I do not seek this Court to compel home confinement. I recognize that it hasn't authority to do so. I do ask this Court to compel the BoP to act lawfully, in accord with its own written policies and applicable statutes, when making my community placement decision. The appropriate remedy is an order requiring the BOP to consider - in good faith and in accord with its own policies - whether or not I should be receive a community placement under § 3621(b). *Brown v. FCI*, No. 14-4514 (3d Cir. June 25, 2015), citing *Woodall,* 432 F.3d at 251 I ask this Court immediately to require these actions by appropriate order.

Dated: November 15, 2016                                Respectfully submitted,

*[signature: Daniel E Carpenter]*

                                                        Daniel E. Carpenter
                                                        Fed. Reg. 90792-038
                                                        USP Canaan Satellite Camp
                                                        P.O. Box 200
                                                        Waymart, PA 18472